800 So.2d 1257 (2001)
Trellis WINDHAM a/k/a Trellis A. Windham, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00764-COA.
Court of Appeals of Mississippi.
November 27, 2001.
*1259 John Paul Barber, Bethesda, MD, Attorney for Appellee.
Office of the Attorney General by John R. Henry Jr., Booneville, Attorney for Appellee.
Before McMILLIN, C.J., THOMAS, and CHANDLER, JJ.
McMILLIN, C.J., for the Court.
¶ 1. Trellis Windham was convicted by a Newton County Circuit Court jury of the crime of sale of controlled substance. He has appealed his conviction to this Court and presents four issues for consideration: (1) He claims that he was denied his constitutional right of confrontation of the witnesses against him. Specifically, he says the court erred when it thwarted his attempts to obtain medical records of a key prosecution witness that were critical to impeaching the witness; (2) He urges that the trial court erred by refusing to suppress incriminating statements he made to investigating officers while he was in custody; (3) He claims that the evidence was insufficient as a matter of law to prove his guilt beyond a reasonable doubt; and (4) Alternatively, he contends that the trial court erred in denying him a new trial based on the fact that the jury's guilty verdict was against the weight of the credible evidence.
¶ 2. We find no merit as to the issues raised by Windham in this appeal. Therefore, we affirm the conviction.

I.

Facts
¶ 3. For purposes of this opinion, the facts are constructed from evidence presented by the prosecution in its case in chief. Cleveland McCall, working as an undercover cooperating individual with the Mississippi Bureau of Narcotics, approached the defendant, Trellis Windham, indicating his desire to purchase one hundred dollars' worth of crack cocaine. Windham, rather than dealing directly with McCall, sent him to another location telling McCall he would be met by someone to complete the transaction. Upon arriving at the designated location, McCall was approached by Eddie Amos, who delivered a supply of crack cocaine in exchange for the agreed sum. Amos, indicted along with Windham as a result of this transaction, testified against Windham at the trial and said he was acting at Windham's express direction in carrying out the sale. He testified that he delivered the cash to Windham, and that Windham compensated *1260 him for his part by supplying him with a quantity of the drug for his own use.

II.

The Right of Confrontation of Witnesses
¶ 4. Windham contends that he was denied his Sixth Amendment right of confrontation of the State's witness, Cleveland McCall, when the trial court refused to give defense counsel access to certain medical records relating to McCall. The medical records had been produced pursuant to a subpoena issued by the defense, but had been tendered under seal because of concerns regarding the confidentiality of those records. Defense counsel contended the records contained information that was vital to an effective cross-examination of McCall. Counsel asserted that the records would reveal, among other things, that the witness had serious drug-induced emotional problems that could affect the jury's view of his credibility. McCall, at a hearing to suppress the subpoena issued by the defense, affirmatively asserted the privilege against disclosure of these records as contained in Mississippi Rule of Evidence 503, entitled "Physician and Psycho Therapist Patient Privilege." On that basis, the trial court refused defense counsel the right to inspect McCall's medical records in order to prepare his cross-examination or to have the opportunity to introduce any such records as exhibits at trial.
¶ 5. On appeal, Windham asserts that his right of confrontation guaranteed by the Sixth Amendment overrides the evidentiary privilege contained in Rule 503. Windham cites, in support of his argument, the case of In re J.E., 726 So.2d 547 (Miss. 1998). That case grew out of a criminal prosecution of an adult defendant for allegedly sexually battering a minor child. In re J.E., 726 So.2d at 548(¶ 1). Prior to the criminal prosecution, there had been a proceeding in youth court in which it was determined that the minor victim was an abused child within the meaning of Mississippi's Youth Court Act. Id. The defendant filed a motion before the youth court to obtain a transcript of that proceeding for use in preparing his defense. Id. at 549(¶ 5). The youth court declined to make the records available to the defendant, relying on the confidentiality provisions of youth court records contained in Section 43-21-261 of the Mississippi Code. Id.
¶ 6. The Mississippi Supreme Court reversed the youth court's ruling and concluded that, upon a showing of relevance of the information in the youth court record, the defendant's rights of confrontation and compulsory process would override the statutory preference for confidentiality. In re J.E., 726 So.2d at 553 (¶ 23). The supreme court resolved the tension between the two competing interests (statutory confidentiality and right of confrontation) by directing the trial court to undertake an en camera inspection of the records and to release only information found to have legitimate relevance to the defendant's preparation and presentation of his defense to the criminal charges. Id.
¶ 7. We do not think that In re J.E. answers the issue before us. The statutory provisions relating to the confidentiality of youth court records are not absolute by any means. The statute itself provides that the confidentiality requirement may be overridden by a determination that disclosure would advance the child's best interests or the public safety. Miss.Code Ann. § 43-21-261 (Rev.2000). The authority to release records is vested in the discretion of the youth court judge. The Mississippi Supreme Court, in ordering the provisional release of the records for possible evidentiary use on a showing of need by the *1261 defendant, did not decide the case on the basis that the defendant's constitutional rights had trumped provisions of a state statute that required a different result. Rather, the court simply determined that the youth court judge had abused his discretion in flatly denying the defendant's request for access on the ground that "where the issues are weighty, as here, the best interest of the child, as well the proper and just functioning of our youth court system, demands that [the defendant] have limited access to the materials he seeks." In re J.E., 726 So.2d at 553 (¶ 22).
¶ 8. In the case before us, we are not dealing with a statute that provides a presumptive, but not absolute, scheme of confidentiality. Rather, the evidentiary privilege created by Rule 503, once properly asserted, appears to be absolute. There are no engrafted exceptions to the privilege permitting release of information to promote the "best interests" of any party or to advance matters of "public safety" such as those that appear in the youth court statutory provisions.
¶ 9. The Mississippi Supreme Court has previously announced quite clearly that the physician-patient privilege applies with equal force in criminal proceedings as it does in civil cases. Cotton v. State, 675 So.2d 308, 312 (Miss.1996).
¶ 10. The physician-patient privilege as recognized in Mississippi did not exist at the common law. See Whalen v. Roe, 429 U.S. 589, 601-602, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); see also United States v. Harper, 450 F.2d 1032, 1035 (5th Cir.1971). Nevertheless, once a privilege such as this has been properly recognized in the affected jurisdiction and has become an integral part of the rules governing the conduct of judicial proceedings, there does not appear to be any legitimate basis to argue that the privilege can be overridden by constitutional concerns relating to confrontation, compulsory process, or general considerations of due process. Rather, the privilege becomes indistinguishable in its impact from such long-recognized privileges arising in the common law as the attorney-client privilege, the priest-penitent privilege, or the spousal privilege. Certainly no reasonable contention can be made that these venerable privileges can be struck down in a particular case upon nothing more than a showing that vital information may otherwise be unavailable to the defense.
¶ 11. The United States Supreme Court recognized the supremacy of these evidentiary privileges over competing constitutional claims in United States v. Nixon, 418 U.S. 683, 708, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). The Supreme Court moved further in the area of privileges in 1996 when it decided the case of Jaffee v. Redmond, which recognized for the first time a common law psychotherapist-patient privilege in federal proceedings. Jaffee v. Redmond, 518 U.S. 1, 10, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The Supreme Court, in the Jaffee decision, left little doubt that this privilege enjoyed the same stature as spousal or attorney-client privileges in the context of federal litigation. Id. at 10, 116 S.Ct. 1923. We can see no basis to give the privilege less force in this state than a similar privilege would be afforded in the federal courts.
¶ 12. There simply is no recognized principle of law by which such recognized privileges as the attorney-client privilege, the priest-penitent privilege, or the privilege against self-incrimination can be ignored and evidence compelled despite the assertion of those privileges no matter the urgency of a criminal defendant's need for the protected information. We find no basis to distinguish the doctor-patient privilege and give it less certain effect than is afforded these other privileges. The trial court did not err when it refused Windham access to McCall's hospital records over *1262 McCall's assertion of the privilege protecting him from disclosure of such records without his permission.

III.

Suppression of Defendant's Statement
¶ 13. Windham, after he was arrested, made a statement to investigating officers that was, at least indirectly, incriminatory. Specifically, an investigating officer testified that, while in custody, Windham, who was a former deputy sheriff, was asked why he had become involved in drug activity and that he said he did so because a former sheriff "had spread some bad things about him" that hindered his ability to find employment.
¶ 14. Prior to the officer testifying to these facts, Windham sought to have those statements suppressed, claiming that his statements were not voluntarily given but were, rather, elicited under combined threats and promises of lenience. Specifically, Windham claimed that he was told that he could face a sentence of up to two hundred years if convicted of all charges then under consideration, but that if he would cooperate with law enforcement officers, they would intercede in his favor with the district attorney's office. Certainly, Windham's contentions, if true, have legal merit. The Mississippi Supreme Court has specifically said that offers to speak favorably to the district attorney coupled with additional persuasive techniques or threats of harsh sentences render a statement involuntary. Layne v. State, 542 So.2d 237, 241 (Miss.1989); Bartee v. State, 180 Miss. 141, 141, 177 So. 355, 356 (1937).
¶ 15. However, there are two factual flaws in Windham's argument, either of which is enough to render this issue without merit. First of all, there is no testimony, either from the officers themselves or from Windham, that he was either cajoled or coerced into admitting his involvement in drug trafficking. Rather, the only testimony about alleged efforts to persuade Windham to cooperate related to attempts to persuade him to assist law enforcement officers in providing information and assistance useful in catching other individuals involved in the drug trade. A promise of leniency in exchange for future cooperation is not the same thing as a promise of leniency in exchange for a confession of prior criminal activity. Thus, whether the officers were overly zealous in their efforts to enlist Windham as a reluctant soldier in the war on drugs, that contention has no relevance on the question of whether he was led by improper methods to implicate himself in past crimes.
¶ 16. Secondly, Windham, in presenting evidence at the suppression hearing, did not claim as fact that he made the alleged incriminating statement because either (a) he had been intimidated into doing so by the officers' threats of substantial punishment or (b) he hoped for favorable treatment in exchange for incriminating himself. Rather, Windham simply denied having made such a statement at all. The subjective state of mind of the defendant is the sole relevant point of inquiry in determining whether an incriminating statement was freely and voluntarily given. It is simply illogical for a defendant to contend that he did not make the statement at all and then attempt to argue that, if he did make such a statement, he only did so under duress or in anticipation of favorable treatment. While there may be instances in litigation where mutually contradictory assertions may be advanced alternatively, we do not conclude this to be one.

IV.

Sufficiency of the Evidence
¶ 17. Windham urges this Court to conclude that the evidence was insufficient to show his wilful participation, directly or indirectly, in the actual drug transaction *1263 between McCall and Windham's coindictee, Eddie Amos. This contention is advanced at the trial through a motion for a directed verdict, by which the defendant claims that, as to one or more of the essential elements of the crime, the State's proof is so lacking that no reasonable juror, viewing the evidence fairly, could vote to convict. Nicholson ex. rel. Gollott v. State, 672 So.2d 744, 752 (Miss.1996). On an appeal from a refusal of the trial court to intercede on the defendant's behalf, the appellate court must review all the evidence in the light most favorable to the State and determine whether, in the view of this Court, there was such a fatal flaw in some aspect of the State's proof. Hill v. State, 774 So.2d 441, 446 (¶ 17) (Miss.2000).
¶ 18. Windham's argument concerning the sufficiency of the evidence of his guilt is based essentially on the proposition that "Amos' testimony that Windham directed his cocaine sale to Cleveland McCall is so effectively impeached as to render it completely unreliable." Without the connection supplied by Amos's testimony, Windham contends, there is no other credible evidence implicating him in the transaction. Windham, in his brief, does not expand on this argument beyond his essentially conclusory assertion quoted above. He fails to point to the portions of the record that demonstrate the complete impeachment of Amos's credibility. Our own review of the record reveals that defense counsel did succeed in having Amos admit that he had, on several occasions prior to trial, made statements to the effect that Windham was not involved in the sale. A prior statement such as this, inconsistent with the witness's testimony being offered at trial, is certainly a proper and often effective means of impeaching the witness, thereby calling into doubt the probative value of the witness's evidence. Ellis v. State, 790 So.2d 813, 814-815(¶ 4) (Miss.2001); see also Moffett v. State, 456 So.2d 714 (Miss.1984). However, such impeachment does not automatically destroy the witness's credibility. It is the duty of the jury to consider all the evidence, including matters presented that tend to impeach a witness's credibility, and then to decide what weight and worth to give to any particular witness's testimony. Quay v. Crawford, 788 So.2d 76, 83 (¶ 30) (Miss. Ct.App.2001). It is not at all uncommon for the jury to be called upon to resolve sharp and irreconcilable differences in the evidence presented for its consideration. Once that difficult duty is completed and a verdict returned, both the trial court and an appellate court are obligated to give substantial deference to the jury's decision. Estes v. State, 782 So.2d 1244, 1255 (¶ 28) (Miss.Ct.App.2001). In this case, the jury chose to believe Amos's testimony implicating Windham in the crime. We do not find the circumstances of Amos's previous statements to the contrary to be so convincing as to render his in-court testimony incredible to the degree that no rational juror could possibly accept it as true. Windham's argument that the evidence of his guilt was insufficient, requiring as it does the total rejection of Amos's testimony as its cornerstone, is without merit.

V.

Weight of the Evidence
¶ 19. Even in those cases where there is sufficient credible evidence presented by the State to prove the essential elements of the crime, it remains within the power of the trial court to award the defendant a new trial when the court concludes, based on its evaluation of all of the evidence, that the jury's verdict was so against the weight of the evidence that to permit it to stand would work a substantial miscarriage of justice. Simmons v. State, 722 So.2d 666, 674 (¶ 55) (Miss.1998). The trial court, in ruling on a new trial motion on this ground, must consider the evidence *1264 in the light most favorable to upholding the verdict. Austin v. State, 784 So.2d 186, 196 (¶ 39) (Miss.2001). The trial court is vested with substantial discretion in ruling on such a motion and, if the motion is denied, an appellate court may disturb that ruling only if it is satisfied that the trial court was manifestly in error. Long v. Harris, 744 So.2d 839, 842 (¶ 12) (Miss.Ct. App.1999). The appellate court must make that determination after undertaking its own comprehensive review of the evidence, viewing it in the light most favorable to the prosecution. Bridges v. State, 790 So.2d 230, 234(¶ 9) (Miss.Ct.App.2001). Based on our review of the evidence, we do not find the evidence tending to exonerate Windham to be so compelling or the evidence implicating him in the crime to be so thoroughly impeached or contradicted as to leave us convinced that a miscarriage of justice would occur if Windham were not given a new trial. For that reason, we find Windham's claim that the verdict was against the weight of the evidence to be without merit.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF NEWTON COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH TWENTY-FIVE YEARS TO BE SERVED AND FIVE YEARS TO BE SERVED ON POST-RELEASE SUPERVISION AND FINE OF $10,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.