913 So.2d 1044 (2005)
Eddie JENKINS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01953-COA.
Court of Appeals of Mississippi.
May 17, 2005.
Rehearing Denied October 25, 2005.
*1046 Patsy Ann Bush, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before LEE, P.J., MYERS and BARNES, JJ.
MYERS, J., for the Court.
¶ 1. An indictment was returned against Eddie Jenkins by the Copiah County, Mississippi Grand Jury during the July 2003 term, charging him with the offense of aggravated assault pursuant to Mississippi Code Annotated § 97-3-7 (Rev.2000). Jenkins was tried in the Copiah County Circuit Court, found guilty of the crime charged, and sentenced to a term of fifteen years imprisonment, with nine years suspended, six years to serve, and three years post-release supervision. Aggrieved by the findings and sentence imposed by the trial court, Jenkins appeals raising the following three issues:
I. WHETHER THE TRIAL COURT ERRED IN OVERRULING JENKINS'S MOTION TO QUASH THE INDICTMENT.
II. WHETHER THE TRIAL COURT ERRED BY GRANTING JURY INSTRUCTIONS S-4, D-10 AND D-13.
III. WHETHER THE TRIAL COURT ERRED BY FAILING TO GRANT JENKINS'S PEREMPTORY INSTRUCTION AND/OR JUDGMENT NOTWITHSTANDING THE VERDICT OR ALTERNATIVELY FOR A NEW TRIAL.
Finding no error, we affirm.

STATEMENT OF FACTS
¶ 2. On Friday, October 4, 2003, Jenkins was accompanied by Troy Ayers, and the two went to the Oak Ridge Apartments, which is located immediately outside Hazlehurst, Mississippi. Upon arriving, Jenkins parked his vehicle in a parking lot adjacent to the apartments and began socializing with the crowd that had gathered there.
¶ 3. At approximately 10:30 that evening, Bernard Windom, a resident of Oak Ridge Apartments, came to the parking lot so that he could leave and go to work, but he was unable to do so because his car was blocked by Jenkins's vehicle. Windom recognized the car as belonging to Jenkins and asked him to move the vehicle so that he could go to work. Windom, believing that Jenkins would move his car as requested, got into his vehicle and prepared to leave. Jenkins did not move his car; so, Windom again went to ask Jenkins to move and a fight ensued.
¶ 4. The two men were separated momentarily and Jenkins retrieved a pistol from his car, returned to Windom, and struck Windom over the head and in the face with the pistol. The two men were again separated and Jenkins fired two *1047 shots in the air, which dispersed the crowd which had gathered.
¶ 5. At some point during the confrontation, Mattrea Washington came to Windom's aid, and Jenkins threatened to strike her if she refused to move. Washington refused to move and was struck by Jenkins's pistol as she was attempting to aid Windom.
¶ 6. After firing the pistol, and upon word that the police were coming, Jenkins left the scene. Officer Keith McElveen of the Copiah County Sheriff's office arrived at the apartments, where he noticed a large gathering of people. McElveen found Windom in an apartment, lying behind the door with head injuries. Windom was then taken to the emergency room for medical treatment, which required the use of staples for his wounds. Through his investigation, McElveen developed Jenkins as the suspect and soon arrested him at a home in Crystal Springs, Mississippi.

LEGAL ANALYSIS

I. WHETHER THE TRIAL COURT ERRED IN OVERRULING JENKINS'S MOTION TO QUASH THE INDICTMENT.

STANDARD OF REVIEW
¶ 7. "The issue of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by this Court." Nguyen v. State, 761 So.2d 873, 874(¶ 3) (Miss.2000) (citing Peterson v. State, 671 So.2d 647 (Miss.1996)). We note that the Mississippi Supreme Court has previously stated that the "question of whether an indictment is fatally defective is an issue of law." Peterson v. State, 671 So.2d 647, 652 (Miss.1996). "However, where questions of law are raised, the applicable standard of review is de novo." Graves v. State, 822 So.2d 1089, 1090(¶ 4) (Miss.Ct.App.2002) (citing Pickett v. State, 751 So.2d 1031, 1032(¶ 8) (Miss.1999); Brown v. State, 731 So.2d 595, 598(¶ 6) (Miss.1999)). Therefore, Jenkins' claim will be reviewed de novo.

DISCUSSION
¶ 8. Jenkins contends that the trial court erred by failing to quash the indictment, because the charge of aggravated assault was fatally flawed for failing to recite an essential element of aggravated assault. Jenkins contends that the grand jury's failure to find that Jenkins used the gun as a means likely to produce death or serious bodily injury, or that Jenkins had caused "serious" bodily injury, constitutes a fatal defect in his indictment. The indictment in question read in pertinent part as follows:
Eddie Jenkins, late of county aforesaid, on or about the 4th day of October, 2002, in COPIAH County, Mississippi, and within the jurisdiction of this court, did wilfully, unlawfully, feloniously and purposely cause bodily injury to another, namely, one Bernard Windom, a human being, with a deadly weapon, to-wit: a handgun, by then and there striking the said Bernard Windom about the head and face, contrary to and in violation of Section 97-3-7 of the Mississippi Code of 1972, and against the peace and dignity of the State of Mississippi.
¶ 9. At the trial level, Jenkins filed his motion to quash the indictment, arguing that the indictment was fatally flawed for its failure to recite an essential element of the crime of aggravated assault. Specifically, Jenkins argues that the grand jury failed to find that he used the gun as a means likely to produce death or serious bodily injury, nor did the grand jury find that Jenkins caused "serious" bodily injury. Prior to trial, Jenkins's counsel filed a *1048 motion to quash the indictment on this theory. During argument of Jenkins's motion, his counsel inquired as to under which subsection of Mississippi Code Annotated § 97-3-7(2) (Rev.2000) Jenkins was charged. This colloquy is as follows:
MS. BUSH: At this point, Your Honor, may I make a ore tenus motion to ask her which one of the sections that she's traveling under. He's only indicted under the general statute, and I want to know if she's going under (a) or (b).
MS. BUCKLEY (assistant district attorney): The statute speaks for itself, Your Honor.
MS. BUSH: Well, I 
MS. BUCKLEY: The victim was assaulted with a deadly weapon.
MS. BUSH: I believe if I'm not  under Rushing, I believe that I am entitled to, you know, know which section.
THE COURT: She just told you.
MS. BUSH: Is that 2(b)?
MS. BUCKLEY: I don't have the  I don't' have the statute in front of me. If you can't look at the indictment and look at the statute, we'll go upstairs and do that together 
MS. BUSH: Well, I've got it. Here's the statute, if you'll take a look at it.
THE COURT: Counsel, the assistant district attorney just told you that your client produced bodily injury with a deadly weapon. I don't know if that's section (a) or section (b), but that's the portion 
MS. BUSH: Yes, sir.
MS. BUCKLEY: The word "seriously" is not contained in the indictment.
THE COURT: That's correct.
MS. BUSH: Thank you very much.
THE COURT: Yes, ma'am. Anything else?
MS. BUCKLEY: Not from the State, Your Honor. Thank you.
THE COURT: Okay.
¶ 10. Jenkins concedes that he was charged pursuant to Mississippi Code Annotated § 97-3-7(2)(b), which states in pertinent part as follows: "(2) A person is guilty of aggravated assault if he ... (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm...."
¶ 11. Having firmly established that Jenkins was charged under Mississippi Code Annotated § 97-3-7(2)(b), we will analyze each of Jenkins' contentions separately. Jenkins' first argument of error regarding the indictment is the same argument asserted at trial, that the indictment under which he was charged was fatally defective for failure to include the term "serious." As stated above by our applicable standard of review, this Court will review Jenkins' claim under a relatively broad standard of review.
¶ 12. Both this Court and the Mississippi Supreme Court have held that when an individual is charged pursuant to Mississippi Code Annotated § 97-3-7(2)(b), the State need not prove the victim suffered "serious" bodily injury. In Jackson v. State, 594 So.2d 20, 24 (Miss.1992), the Mississippi Supreme Court stated:
It is not necessary under § 97-3-7(2)(b) that the use of hands and fists constitute the use of a "deadly weapon;" rather, it is enough if their use constitutes a "means likely to produce [either] death or serious bodily harm." Nor is it necessary under this section for the State to prove the victim suffered "serious" bodily injury. Mere "bodily injury" is sufficient so long as it was caused with "other means likely to produce death or serious bodily harm."
*1049 ¶ 13. This Court, in reliance on the Jackson decision, has stated "Section 97-3-7(2)(b) requires a showing of bodily injury by purposeful, knowing or reckless use of a deadly weapon. Therefore, no `serious' injury is required." Mason v. State, 867 So.2d 1058, 1060(¶ 6) (Miss.Ct.App. 2004) (citing Jackson 594 So.2d at 24). Thus, Jenkins's "serious" injury argument is meritless.
¶ 14. Jenkins next contends that there are two ways in which an individual may be charged under Mississippi Code Annotated § 97-3-7(2)(b). First, Jenkins argues it was unclear whether he was being charged "with the gun as a deadly weapon which caused injury" or "where the gun was used in such a manner as to likely to produce death or serious bodily injury." Jenkins then argues that the Mississippi legislature intended to make two separate distinctions. In support of his theory, Jenkins cites this Court to Mississippi Municipal Liability Plan v. Jordan, which states "[w]hatever the [L]egislature says in the text of the statute is considered the best evidence of the legislative intent." Mississippi Municipal Liability Plan v. Jordan, 863 So.2d 934, 944(¶ 24) (Miss.2003) (quoting Pegram v. Bailey, 708 So.2d 1307, 1314 (Miss.1997)).
¶ 15. Jenkins is correct in his argument that the text of a statute is the best evidence of the legislative intent. The statute in question is abundantly clear that there are two methods in which a person may be found guilty of aggravated assault, hence the use of subsections (a) and (b). First, under subsection (2)(a), an individual may be found guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" The second manner in which the Mississippi legislature intended one to be guilty of aggravated assault is pursuant to subsection (2)(b) which states one may be found guilty of aggravated assault if he "attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]" It is clear that the legislative intent was that one may be found guilty of aggravated assault by either of the two aforementioned methods, and Mississippi's caselaw has long upheld this notion. As stated in the Mason opinion, "Mississippi Code Annotated Section 97-3-7(2) delineates two separate crimes of aggravated assault." Mason, 867 So.2d at 1059(¶ 6) (emphasis added). Therefore, Jenkins is incorrect in arguing that there are two separate distinctions within § 97-3-7(2)(b) itself. It is clear from the indictment that Jenkins was charged with having violated § 97-3-7(2)(b).
¶ 16. Last, we will address Jenkins' argument that the indictment was faulty, as the grand jury did not charge that Jenkins used the gun as a means likely to produce death or serious bodily injury. This was a question of fact, and it is well established in Mississippi that such determinations are to be made by the jury in its role as fact finder. Griffin v. State, 540 So.2d 17, 19 (Miss.1989). More specifically, the Mississippi Supreme Court held that a jury may find a pistol to be a deadly weapon which can cause bodily injury to another, whether it is used as a bludgeoning instrument or whether it is used for its designed purpose. Griffin, 540 So.2d at 19. It is within the province of the jury to determine whether or not such use makes the pistol a deadly weapon within the meaning of Mississippi Code Annotated § 97-3-7(2)(b). Walls v. State, 759 So.2d 483, 487(¶ 11) (Miss.Ct.App.2000). At trial the jury did in fact find that Jenkins used *1050 the pistol in such a manner. Therefore, this argument is without merit.

II. WHETHER THE TRIAL COURT ERRED BY GRANTING JURY INSTRUCTIONS S-4, D-10 AND D-13.

STANDARD OF REVIEW
¶ 17. Jury instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case; however, the trial judge may also properly refuse the instructions if he finds them to incorrectly state the law, repeat a theory fairly covered in another instruction, or to be without proper foundation in the evidence of the case. Stack v. State, 860 So.2d 687, 697(¶ 24) (Miss.2003) (citing Humphrey v. State, 759 So.2d 368, 380(¶ 33) (Miss.2000)) (overruled on other grounds).

DISCUSSION
¶ 18. Jenkins next contends that jury instructions 4, 5, and 6 were given to the jury in error. Jenkins first argues that jury instruction 4, State's instruction S-2, was in error because the instruction reflected the elements of the crime as listed in the indictment returned by the grand jury. Jenkins argument regarding the alleged error in this instruction mirrors the argument of error addressed in Issue I. Having found the indictment sufficiently tracks Mississippi Code Annotated § 97-3-7(2)(b), the instruction properly listed the elements of the crime the jury must find in order to find Jenkins guilty. Therefore, the trial court's granting of such an instruction was not in error.
¶ 19. Jenkins next contends that jury instructions 5, defense instruction D-10, and 6, defense instruction D-13, were in error. Jury instructions 5 and 6 were filed by Jenkins's counsel at the trial court's urging because of the lack of an instruction by either the State or defense defining a deadly weapon. Jenkins's trial counsel offered the requested instructions to the court but stated on the record that she wished to preserve the issue for possible appeal.
¶ 20. Jenkins argues that these instructions were given in error in that the instructions added an essential element to the indictment. Jenkins argues that by granting these instructions, the trial court added the element of "serious" bodily harm. The instructions in question read as follows:
Jury instruction no. 5
The Court instructs the jury that a gun used as a blunt instrument to hit someone is not inherently a deadly weapon. Rather it is for you the Jury to decide if a gun used as a blunt instrument to hit someone was used as a deadly weapon.
Jury instruction no. 6
A deadly weapon may be defined as any object, article or means which, when used as a weapon under the existing circumstances is reasonably capable of producing or likely to produce serious bodily harm to a human being upon whom the object, article or means is used.
¶ 21. It is apparent from Jenkins's brief that Jenkins is confused by the wording of Mississippi Code Annotated § 97-3-7. As discussed in Issue I, there are two manners in which a person may be found guilty of aggravated assault. First, one who attempts to cause serious bodily injury to another or who causes serious bodily injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life, can be found guilty of aggravated assault in accordance with Mississippi Code Annotated *1051 § 97-3-7(2)(a). Stated another way, one who actually causes or attempts to cause serious bodily injury to another under a variety of circumstances may be charged with aggravated assault. The key distinction to this form of aggravated assault is the serious bodily injury requirement. Secondly, one who attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm, may be found guilty of aggravated assault under Mississippi Code Annotated § 97-3-7(2)(b). Stated another way, one who actually causes or attempts to cause bodily injury to another with a deadly weapon may be charged with aggravated assault pursuant to subsection (2)(b). The key distinction between the two subsections is that pursuant to subsection (a), one must cause serious bodily injury, while under subsection (b), one must carry out the assault with a deadly weapon or other means likely to cause serious bodily injury or death. Serious bodily injury or death, need not be the end result in order to be successfully charged with aggravated assault pursuant to subsection (b). All that is required under subsection (b) is that the offending actions must have been likely to cause such a result. Jenkins argues that because the definition of a deadly weapon, as outlined by jury instruction 6, mentions the word "serious bodily harm" that the provisions of Mississippi Code Annotated § 97-3-7(2)(a) are automatically incorporated.
¶ 22. When reviewing Mississippi Code Annotated § 97-3-7(2)(b) in conjunction with jury instruction 6, it becomes readily apparent that the language "serious bodily harm" as stated in Jury Instruction 6 is in reference to the weapon's capability. The language of jury instruction 6 has nothing to do with subsection (2)(a), nor does it have anything to do with the harm actually caused by the defendant. The language solely addresses the capabilities of the weapon in issue and those capabilities the jury must find the weapon to possess in order to deem the weapon a "deadly weapon."
¶ 23. Jury instructions 5 and 6 clearly state the law applicable to Jenkins's case and adequately instruct the jury on these issues. The instructions address what elements the jury must have found in order to make the determination that the pistol, as used, met the requirements of the definition of a "deadly weapon." Having found that the jury instructions in issue were proper statements of the law and adequately instructed the jury as to the findings necessary for a verdict of guilty, this issue is without merit.

III. WHETHER THE TRIAL COURT ERRED BY FAILING TO GRANT JENKINS'S PEREMPTORY INSTRUCTION AND/OR JUDGMENT NOTWITHSTANDING THE VERDICT OR ALTERNATIVELY FOR A NEW TRIAL.

STANDARD OF REVIEW
¶ 24. Denials of motions for directed verdict, judgment notwithstanding the verdict, and a request for a peremptory instruction are each reviewed under the same standard of review. Nunnally v. R.J. Reynolds Tobacco Co., 869 So.2d 373, 378-79(¶ 10) (Miss.2004) (citing Shelton v. State, 853 So.2d 1171, 1186(¶ 48) (Miss. 2003)). This Court will consider the evidence in the light most favorable to the appellee. In doing so, this Court must give that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. If the facts as considered point so overwhelmingly in favor of the appellant, so that reasonable jurors could not have arrived at a contrary verdict, we are required to reverse and render. *1052 On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, we must affirm. Nunnally, 869 So.2d at 379(¶ 10).
¶ 25. A motion for a new trial goes to the weight of the evidence. In determining whether a jury verdict is against the overwhelming weight of the evidence, we will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Walker v. State, 881 So.2d 820, 831(¶ 32) (Miss.2004) (citing Hubbard v. State, 819 So.2d 1192, 1196(¶ 11) (Miss.2001); Grant v. State, 762 So.2d 800, 804(¶ 8) (Miss.Ct. App.2000)).

DISCUSSION
¶ 26. Jenkins's last assignment of error is that the trial court erred by failing to grant his peremptory instruction and judgment notwithstanding the verdict or alternatively for a new trial. Jenkins contends that reasonable and fair-minded jurors could not have found him guilty of the crime charged, as the witnesses conveyed opposing testimony regarding the force of the blows Windom suffered and the manner in which Jenkins used the pistol. Jenkins contends that his use of the pistol did not constitute the use or attempted use of deadly force and that the manner in which Windom was struck was not a means likely to produce death or serious bodily injury.
¶ 27. Upon review of the record, a series of competing testimony is evident. The State offered the testimony of Officer Keith McElveen, Lori Windom, Bernard Windom, Mattrea Washington, Crystal Jones, and Candis Jones. Jenkins offered the testimony of Troy Ayers and Dr. James Henderson. McElveen's testimony was that upon arrival at the scene, he found Windom lying behind an apartment door, bleeding badly from his head and unable to make a statement at that time. Lori Windom, the victim's sister, testified that she saw a weapon in Jenkins's hand and that she saw Windom's head injuries. Bernard Windom testified that Jenkins struck him with a pistol three times, as well as striking Mattrea Washington with the pistol once. Mattrea Washington testified that she saw a silver object in Jenkins's hand and presumed it was a gun. Further, she testified that she was struck in the face with this object during her attempt to help Windom. Crystal Jones testified that she saw Jenkins with a gun and that she saw Jenkins strike Windom with a gun. Lastly, Candis Jones stated that she saw Jenkins with a gun, saw Jenkins strike Windom with the gun, and saw Jenkins strike Washington with the gun.
¶ 28. To counter the testimony presented by the State's witnesses, Jenkins presented the testimony of Troy Ayers and Dr. James Henderson. Ayers testified that Jenkins did not use a gun during the altercation, and that he had no knowledge of Windom's head injuries. Dr. Henderson testified that Windom's injuries were not serious and that the injuries were not consistent with other "pistol whippings" he had encountered.
¶ 29. The trial court denied both the peremptory instruction and Jenkins's motion for judgment notwithstanding the verdict. Both actions attack the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). As the record supports the finding that there was sufficient evidence against Jenkins for the offense of aggravated assault, the trial court's denials of such motions were not in error.
*1053 ¶ 30. During trial, the parties stipulated that Windom suffered injuries and that the injuries were not of a serious nature. Having found that an injury was suffered, in issue was whether or not Jenkins inflicted these injuries through the use of a deadly weapon. As the record indicates, the State presented the testimony of five witnesses who were present when the fight took place and each testified that they saw Jenkins with a gun and that he struck Windom in the head with the gun. Jenkins presented one witness, who was present at the time of the fight, and stated that Jenkins did not use a gun. Jenkins also presented the evidence of an expert who stated that Windom's injuries were not consistent with injuries one would receive from being "pistol whipped."
¶ 31. Jenkins argues that the trial court erred by failing to grant his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial due to the State's failure to prove a prima facie case. Jenkins argues that the State failed to prove that the gun was used in a manner or by such means likely to produce death or serious bodily injury. As stated in Issue II, whether the pistol was used in such a manner to meet the requirements of a "deadly weapon," was an issue for the jury's determination. The jury was required to base this determination on the testimony of the witnesses presented at trial. "It is the duty of the jury to consider all of the evidence, including matters presented that tend to impeach a witness's credibility, and then to decide what weight and worth to give to any particular witness's testimony." Windham v. State, 800 So.2d 1257, 1263(¶ 18) (Miss.Ct.App.2001) (citing Quay v. Archie L. Crawford and Shippers Exp., Inc., 788 So.2d 76, 83(¶ 30) (Miss.Ct.App.2001)). Based upon the record, it cannot be stated that the jury's determination that Jenkins did indeed use the pistol in a manner consistent with the definition of a deadly weapon is against the overwhelming weight of the evidence. As such, we cannot state that the trial court abused its discretion by failing to grant a new trial. Therefore, this issue is without merit.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS TO SERVE THE FIRST SIX YEARS WITH NINE YEARS SUSPENDED AND THREE YEARS POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COPIAH COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.