ROBERTS, J., for the Court:
 

 ¶ 1. Anthony Adams was convicted in the Circuit Court of Covington County for attempting to cause or purposely or knowingly causing bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm, in violation of Mississippi Code Annotated section 97-3-7(2) (Supp.2009). Adams was subsequently sentenced to seventeen years in the custody of the Mississippi Department of Corrections. Adams now appeals and raises the following issue:
 

 WHETHER THE TRIAL COURT ERRED IN OVERRULING ADAMS’S MOTION FOR A DIRECTED VERDICT DUE TO INSUFFICIENT EVIDENCE TO PROVE AN ESSENTIAL ELEMENT OF THE CRIME
 

 Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶2. Officer Cindy Hall responded to a call at apartment 21 at the Collins Apartments, and upon her arrival, she found a
 
 woman
 
 screaming. After entering the apartment, Officer Hall found Derrick Lockett lying on the floor, bleeding, and gurgling in his own blood. Lockett was lying underneath a fallen entertainment rack. Officer Hall testified to the surroundings of the apartment through use of photographs including: the damage made to the entry door and frame; the chair Dorothy Fairly used to block the door; and the shooting victim lying on the blood-soaked floor.
 
 [1]
 

 ¶ 3. Officer Eric Banks also received a call to respond to a shooting at apartment 21 at the Collins Apartments. Officer Banks’s report reflects that Adams allegedly shot Lockett. Officer Banks testified regarding the search he and other police officers performed to locate Adams, but he testified that Adams was not located until November 27, 2006, sixteen days after the shooting had occurred.
 

 
 *1181
 
 ¶ 4. Lockett, the shooting victim, testified regarding the events of November 11, 2006, and the events that led up to the shooting. Lockett met Fairly approximately one week before the shooting when he went to Collins, Mississippi for the first time. Lockett was later asked by Fairly and her sister if he would come to Collins again on November 11, 2006.
 

 ¶ 5. On the evening that Lockett went to Collins, at the request of Fairly and her sister, he attended a party with Fairly. After the party, they returned to Fairly’s apartment. It was approximately 2:30 a.m. or 3:00 a.m. when Lockett heard two “big booms,” the second of which got him out of bed. Lockett testified that:
 

 By then, the door flew open in the bedroom, and I was actually bending over putting my boxers on and did not have time, and I seen (sic) the defendant right here, Anthony Adams, run (sic) through the door with a gun pointing at it. And ... when he attacked me with the gun, I put my hand up and blocked the first, because I guess he was going to try to pistol whip me and I blocked it. And he shoved me. When he pushed me, I went back into the bed. And then I got shot, you know. And when I got shot, I dropped to my knees. And when I dropped to my knees, I touched my side and I said, you shot me. And then he’s trying to pull the trigger again, and supposedly, I guess it jammed on him or, you know, whatever, and then he took off with it, you know running.
 

 ¶ 6. Lockett testified that he has never owned a weapon of any sort, and he did not have a gun on the night he was shot. Lockett also stated that he incurred serious injuries from the gun wound, and although he underwent several surgeries, he still suffers from kidney and liver injuries.
 

 ¶ 7. Adams took the stand as the sole witness on his behalf. Adams first testified that he was living in apartment 21 at the Collins Apartments with Fairly and their two-month-old daughter. However, Adams later testified that he was living with his mother; but he still had a key to Fairly’s apartment, which he used to gained access to the apartment on the night of November 11, 2006. Though he denied being broken up with Fairly at the time, he did testify that he was staying at his mother’s house rather than the apartment he had shared with Fairly for three years, because things had recently changed between them. Upon his arrival at Fairly’s apartment, Adams testified that he saw a bathroom light on. Adams went to the bedroom door, and he saw a naked man, who turned out to be Lockett, running at him with a gun. Adams testified he neither gave Lockett permission to be at his home, nor had he ever invited Lock-ett there before. Adams testified that he assumed Lockett had broken into his house. Adams proceeded to fight with Lockett over the gun, but after the gun went off, Adams fled from the scene.
 

 ¶ 8. Adams testified that he returned to his mother’s house after the tussle over the gun. He explained to his mother that there was a man in his apartment with a gun. He also stated Fairly and his child were nowhere to be found.
 

 ANALYSIS
 

 ¶ 9. Adams contends he merely tried to pistol whip Lockett, not shoot him. Therefore, Adams argues the State failed to prove a significant element of the crime, by failing to prove that he knowingly and purposefully caused bodily injury to Lock-ett. However, “there is apparently no specific intent requirement” that the State is obligated to prove.
 
 McGowan v. State,
 
 541 So.2d 1027, 1029 (Miss.1989). Indeed, merely proving that a defendant attempted to cause, or knowingly or purposefully did
 
 *1182
 
 cause, bodily injury with a deadly weapon is sufficient to warrant a conviction for aggravated assault. Miss.Code Ann. § 97-3-7(2).
 

 ¶ 10. Our standard of review of a denial of a motion for a directed verdict is clear. If upon our review the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed,” then we will not hesitate to affirm a trial court’s denial of a motion for a directed verdict.
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting
 
 Carr v. State,
 
 208 So.2d 886, 889 (Miss.1968)). The question is not whether this Court believes that the evidence is sufficient to support the defendant’s conviction, but whether “after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Id.
 
 (quoting
 
 Jackson v. Virginia,
 
 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
 

 ¶ 11. Pursuant section 97-3-7(2), “[a] person is guilty of aggravated assault if he ... b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]” As stated in
 
 Russell v. State,
 
 924 So.2d 604, 609 (¶ 9) (Miss.Ct.App.2006), in order to meet its burden of proof, the State must prove beyond a reasonable doubt that the defendant purposely or knowingly caused or attempted to cause “bodily injury” to another with a deadly weapon. On the night in question, the evidence shows that Adams shot Lockett after a tussle over the gun had transpired. Regardless of whether Adams was attempting to pistol whip or shoot Lockett, there is still sufficient evidence to show that Adams knowingly and purposely caused bodily injury to Lockett by using a deadly weapon.
 

 ¶ 12. Adams relies on
 
 Jenkins v. State,
 
 913 So.2d 1044 (Miss.Ct.App.2005), and
 
 Russell;
 
 however, these cases do not aid his argument that pistol whipping an individual does not constitute aggravated assault. In
 
 Jenkins,
 
 the defendant used a pistol to strike a victim in the head, rather than shoot him.
 
 Jenkins,
 
 913 So.2d at 1046 (¶ 4). Even though no shooting occurred, Eddie Jenkins was found to have used the pistol as a deadly weapon in a manner likely to produce death or serious bodily injury.
 
 Id.
 
 at 1049 (¶ 16). Therefore, his conviction was affirmed.
 
 Id.
 
 at 1053 (¶ 32). Also, in
 
 Russell,
 
 the defendant was found to have purposely and knowingly caused serious bodily injury by striking the victim with a pipe.
 
 Russell,
 
 924 So.2d at 607-08 (¶6). Not only do these cases fail to support Adams’s argument, they in fact weigh against him.
 

 ¶ 13. Furthermore, although he does not mention self-defense or defense of others in his appellate brief, it is clear from Adams’s testimony that his theory of the case at trial was that he had stumbled upon a break-in at his home, and he was attempting to protect Fairly and his child. Specifically, Adams stated: “I felt like he done (sic) broke in my house, done (sic) raped my old lady[,] and did something to my two-month-old daughter.” However, Lockett’s testimony as to the events of that night, and which man possessed the gun, differed. It is well settled that “[w]hen evidence is in conflict, the jury is the sole judge of both the credibility of a witness and the weight of his testimony.”
 
 Payton v. State,
 
 897 So.2d 921, 940 (¶ 57) (Miss.2003). Given the jury’s verdict, it is clear which version of events the jury decided to believe.
 

 ¶ 14. Given that the evidence before the jury was more than sufficient to sustain a
 
 *1183
 
 finding of guilty of aggravated assault when viewed in a light most favorable to the prosecution, we find that the circuit court did not err in denying Adams’s motion for a directed verdict. As such, Adams’s only issue is without merit.
 

 ¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF COVINGTON COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF SEVENTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COV-INGTON COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Fairly was Adams former girlfriend. She lived at the apartment at the time of the assault. However, she did not testify at Adams's trial.