# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-02463-SCT

*TONY DUNN*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT: 10/16/2003
TRIAL JUDGE: HON. LEE J. HOWARD
COURT FROM WHICH APPEALED: CLAY COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: THAD BUCK
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: W. DANIEL HINCHCLIFF

NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 01/20/2005
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE SMITH, C.J., EASLEY AND RANDOLPH, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     Tony Dunn (Dunn) was indicted by a Clay County Grand Jury on three counts, arising out of the same incident one count for aggravated assault upon Alex James White (White) and two counts for the aggravated assault on a law enforcement officer.

¶2.     Dunn was convicted in the Circuit Court of Clay County, Mississippi, on the charge of aggravated assault, for purposefully and knowingly attempting to cause bodily injury to White with a deadly weapon.  Dunn was acquitted on the other two counts of aggravated assault on a law enforcement officer.

¶3.     Dunn moved for judgment notwithstanding the verdict (J.N.O.V.), or in the alternative, for a new trial. The trial court denied the motion.

¶4.     Dunn was sentenced to serve a term of five years in the custody of the Mississippi Department of Corrections and ordered to pay court costs and a $1,000 fine.  He was also ordered to submit to psychological evaluation and treatment.  Upon release from the MDOC, Dunn was further ordered to serve five years of post-release supervision.

¶5.     Dunn now appeals to this Court.  Finding no reversible error, we affirm.

## FACTS

¶6.     White testified that on November 18, 2002, he had been working for Dan Fisher cutting soybeans until around 8:30 p.m.   On his way home, White's 1984 Chevrolet pickup had carburetor problems that caused his truck to stop and start running two times.  The second time his truck stopped on Old Vinton Road near Dunn's home.  White had to get out of the truck and "bump the carburetor."  The truck started running again, and White got back into his truck and started to drive slowly.  White saw Dunn come out his door and came toward him.  Dunn was holding a pistol.

¶7.     On that evening, Dunn, an off-duty West Point police officer, was at home alone with his child.  Dunn did not testify at trial, but he made a tape-recorded statement to Deputy Joe Huffman with the Clay County Sheriff's Office. Dunn's statement was introduced into evidence and played to the jury.   In his statement, Dunn stated that he had been having prior trouble. According to Dunn's statement, his wife had reported to him that she had someone stalking her when he was on patrol at night.   Dunn installed a surveillance camera outside of his residence. Dunn had became suspicious of vehicles stopped near or driving slowly by his residence.

2

¶8. White testified that Dunn fired one shot at him. White was inside his truck. After the first shot, White testified that he asked Dunn, "what the hell you call yourself doing?" Dunn came closer and shot again. The second shot hit White's truck on the driver's side. When White got home, he discovered a bullet hole near his gas tank. White went to a neighbor's house to call the police.

¶9. White testified that the two deputies who responded to the call, Deputy Bryan Griggs and Auxiliary Deputy Will Sweat, drove him back to the scene of the shooting on Old Vinton Road. The deputies got out of the patrol car and started walking down the road. White heard a shot fired. The deputies ran back to the patrol car and called for backup. White testified that he wanted to go home. The deputies instructed him to stay off the road and go across the pasture to walk around the area of the shooting. White walked home.

¶10. Deputy Griggs testified that he heard a bullet pass near his head and then the sound of a gun firing. Deputy Griggs testified that he drew his weapon and went to the ground. Deputy Griggs told Deputy Sweat that "the son of bitch is shooting at us." They both were on the ground in a ditch. Deputy Griggs stated that he did not see anybody so they ran back to the patrol car. White was still in the back of the patrol car. Deputy Griggs used a cell phone to call Deputy Joe Huffman for backup. He sent White across the pasture to get away from the shooting.

¶11. Deputy Griggs called dispatch back to get more backup. He was informed that Dunn had called in and told them to come on up to his house. Deputy Griggs did not go to the house for fear of being shot at again.

¶12. When Deputy Huffman and Deputy Billy Perkins arrived at the scene, Deputy Perkins blocked off the road with his vehicle. Deputy Huffman remained with Deputy Griggs and put on his bullet proof vest. Deputy Huffman telephoned Dunn.

¶13. Deputy Huffman testified that he instructed Dunn on the telephone to exit his residence with no weapons. Deputy Huffman asked Dunn the whereabouts of the weapon used in the altercation. Dunn directed him to a back bedroom where he retrieved a loaded Rossi .38 special.

¶14. Deputy Huffman also retrieved a loaded Glock model 22 .40 caliber gun from the Dunn residence. Deputy Huffman testified that Dunn told him that he fired the .38 special the first time at White's truck coming down the road. The second incident, Dunn fired the .40 caliber Glock because it had more fire power and rounds.

¶15. Deputy Huffman identified Dunn as the individual that admitted to him of firing at White, Deputy Sweat and Deputy Griggs. On November 19, 2002, at 12:24 a.m., Dunn made a tape-recorded statement to Deputy Huffman. The tape and a transcript of the tape-recorded statement were introduced into evidence and given to the jury. In that statement introduced to the jury, the following exchange occurred:

> **Dunn:** [A] truck parked in front of my house, and I observed it for a few minutes, uh, the way I came about observing the truck was, I was looking for my wife. I was supposed to be at work at 10:00 and she hadn't showed up yet. So I looked outside and I saw headlights and other cars passing by the vehicle and I gave it some more time, went back in and saw about my baby, came back out, a few minutes later, same vehicle still sitting in the same spot. As I got my pistol, went outside to investigate, see what was going on, the vehicle started to drive off...
> **Huffman:** did you shoot in the direction of that truck?
> **Dunn:** I was trying to shoot up in the air...
> **Huffman:** once you shot, did the truck immediately leave or

4

**Dunn:** no, actually it drove past, slow, like it was daring me to fire another shot and I fired a second shot and that's when I hear it strike metal so I assumed that I had hit the truck and then it sped on off.

¶16. Deputy Sweat also testified at trial as to the events that transpired on November 18, 2002. Deputy Sweat and Deputy Griggs responded to White's report of shots being fired at him. He observed the bullet hole in White's truck near its gas tank. White went with Deputy Griggs and Deputy Sweat to the scene where the shooting occurred. When they arrived, the deputies heard a bullet pass over their heads and then the sound of gun fire. Deputy Griggs radioed for assistance. Deputy Sweat identified Dunn as the individual that Deputy Huffman and Deputy Griggs arrested that night.

¶17. Dunn was advised by the trial court of his constitutional right to testify as a witness or not to testify as a witness. Dunn did not testify, and the defense did not call any witnesses. The jury found Dunn guilty on Count 1 for the aggravated assault of White. The trial court denied Dunn's motion for J.N.O.V., or in the alternative, for a new trial.

¶18. Dunn now appeals to this Court raising the sole issue of whether the trial court erred in denying his motion for J.N.O.V., or in the alternative, for a new trial.

## ANALYSIS

¶19. Dunn argues that the trial court erred in its denial of his motion for J.N.O.V., or in the alternative, for a new trial since the verdict was against the overwhelming weight of the evidence. This Court has made a distinction between the review of the denial of a motion for J.N.O.V. based on the legal sufficiency of the evidence and review of a motion for new trial based on the weight of the evidence.

      A.     Legal Sufficiency

¶20.    Dunn was convicted of aggravated assault on White.  Miss. Code Ann. § 97-3-7(2) (2000) sets forth the elements of aggravated assault.  The statute states, in part:

> A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm...

¶21.    On the issue of the legal sufficiency of the evidence, this Court held in *Pinkney v. State,* 538 So.2d 329, 353 (Miss. 1988), *vacated on other grounds*, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990), that reversal can only occur when evidence of one or more of the elements of the charged offense is such that "reasonable and fair minded jurors could only find the accused not guilty."  (quoting *Wetz v. State,* 503 So.2d 803, 808 (Miss. 1987)).  A motion for J.N.O.V. challenges the legal sufficiency of the evidence. *McClain v. State,* 625 So.2d 774, 778 (Miss. 1993).  "[T]his Court properly reviews the ruling on the last occasion the challenge was made in the trial court." *Id.* at 778.  Here, this occurred when the trial court denied Dunn's motion for J.N.O.V. *See id.*

¶22.    In the case sub judice, the State proved the elements of aggravated assault against Dunn. In his testimony, White stated that he had car problems and stopped his car on the side of the road.  He then saw Dunn walking toward him with a gun.  White was sitting in his vehicle when Dunn fired a shot at him.  When White asked Dunn what he was doing, Dunn fired a second shot which hit White's truck near the gas tank on the driver's side of the vehicle.  Police deputies arrived on the scene and White heard more shots being fired.  The police later entered Dunn's house, and Dunn directed them to the back bedroom where police found a loaded Rossi .38

special. The police also recovered a loaded Glock model 22 .40 caliber gun. Deputy Huffman testified the Dunn admitted to firing at White and two other deputies.

¶23. In a tape-recorded statement to the police following the shooting, Dunn admitted firing a gun two times. He claimed that he tried to shoot into the air the first time and then he felt the driver was daring him, so he shot a second time and heard the bullet hit metal on the truck. We find that the evidence clearly shows that the elements of aggravated assault were met in this case.

B. Weight of the Evidence.

¶24. A motion for new trial challenges the weight of the evidence. *Sheffield v. State,* 749 So.2d 123, 127 (Miss. 1999). A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial. *Id.*

¶25. This Court held in *McFee v. State,* 511 So.2d 130, 133 (Miss. 1987), that it has limited authority to interfere with a jury verdict. The Court looks at all the evidence in the light that is most consistent to the jury verdict. *Id.*

> [I]f there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgement might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

*Id.* at 133-34. *See also Edwards v. State*, 800 So.2d 454, 464-65 (Miss. 2001).

¶26. This Court has held that a new trial will not be given unless the verdict is so contrary to the overwhelming weight of the evidence that an unconscionable injustice would occur by allowing the verdict to stand. *Groseclose v. State,* 440 So.2d 297, 300 (Miss. 1983). However, if a jury verdict convicting a defendant is against the overwhelming weight of the

7

evidence, then the remedy is to grant a new trial. *Collier v. State,* 711 So.2d 458, 461 (Miss. 1998).

¶27.    In the case sub judice, the verdict is consistent with the weight of the evidence, and no new trial is warranted.  In Dunn's tape-recorded statement that was introduced to the jury, he admitted that he fired twice at a truck in front of his house.  He stated that when he fired the second shot that he heard the bullet strike metal.  Dunn did not testify or present any witness to contradict the events of November 18, 2002.

¶28.    The State presented the testimony of White, Deputy Griggs, Deputy Sweat and Deputy Huffman.  Deputy Huffman identified Dunn as the individual that fired at White and Deputies Griggs and Sweat on November 18, 2002.  Deputy Huffman retrieved the guns fired by Dunn, from his residence.  Deputy Sweat identified Dunn as the individual that was arrested by Deputy Griggs and Deputy Huffman.  Deputy Huffman testified that Dunn admitted that he first fired the .38 special at White's truck coming down the road.  For the second incident, Dunn fired the .40 caliber Glock because it had more fire power and rounds.

¶29.    We find that Dunn's assignment of error is without merit.

## CONCLUSION

¶30.    For the foregoing reasons, we affirm the judgment of the Clay County Circuit Court.

¶31.    **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIVE (5) YEARS, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAYMENT OF ALL COSTS AND A FINE OF $1,000.00, AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.  DIAZ, J., NOT PARTICIPATING.**