# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01416-COA

SAMI KIVINEN A/K/A SAMI KALEVA KIVINEN      APPELLANT

v.

STATE OF MISSISSIPPI      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/17/2018 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON JR. |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | RONNIE LEE HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 03/30/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. A defendant was indicted and convicted for aggravated assault after he and his son started a brawl outside a bar. Because the jury instruction on aggravated assault did not contain a material element of the crime and was flawed, we reverse and remand his case for a new trial.

## FACTS

¶2. The events leading up to Sami Kivinen's arrest and conviction took place on Silver

Street at the Under-the-Hill Saloon.[1]  One night, he was at Under-the-Hill with his friend Dionna Denning.  At some point during the night, Denning was huddled near the bar's service station with two other patrons, Charles Pickett and Matthew Willis.  Kivinen, on the other hand, sat by himself at the end of the bar.

¶3.    Although Kivinen and Pickett dispute what happened leading up to this point, a shouting match between them suddenly competed with the bar's music.  The exchange was short but apparently so intense that Kivinen tried to "rush" Pickett, and Pickett stopped him by punching him and "putt[ing] him on his back."  Once Willis helped Kivinen to his feet, the bartender promptly ordered Kivinen to leave the bar and called him a cab.  An initially resistant Kivinen finally surrendered and took a taxi home.  Pickett, Willis, and Denning shook off the excitement and finished their evening at the bar.

¶4.    About two to three hours had passed before the bar finally closed for the night.  After agreeing to give his friend a ride, Willis walked up a hill to find his truck while Pickett waited for him outside the bar.  But as Willis walked further up the hill, he saw two people—one he recognized to be Kivinen—suddenly jump out of nearby bushes.[2]  Kivinen was hiding something wrapped in a shirt behind his back while the unknown person armed

---

[1] This is not the first time the Under-the-Hill Saloon has appeared in our jurisprudence.  *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 12 (¶6) (Miss. 2007).  The area's clashing reputation as a "welcoming haven" and nuisance was described by our Supreme Court nearly thirteen years ago.  *Id*. at 12-13 (¶¶7-14).

[2] Kivinen claims he had returned to the bar with his son to retrieve his favorite blue sweater from Denning's car.  He testified he brought his son to the bar with him because he was too drunk to drive himself.

himself with an aluminum bat. Willis testified that before he could rush to warn Pickett, Kivinen unwrapped a pistol from the shirt and struck Pickett on his head with it.[3] The blow caused him to slide down the brick wall and fall to the ground. While he was on the ground, the person with Kivinen, later identified as his seventeen-year-old son Oliver, started beating Pickett on his head with the bat.

¶5. Willis rushed to the scuffle to help Pickett. He grabbed Kivinen, threw him down to the ground, and punched him. Meanwhile, Oliver attempted to stop Willis by hitting him on the head with his bat. But Willis stripped the bat from Oliver and struck him back. Kivinen then "[came] up behind [Willis]" and restrained him in a tight choke-hold. Just as Willis' "air [was] going away" and his "vision [was] getting narrow," Dennings, who had walked outside to see if Willis had gotten his truck, witnessed the commotion, screamed "stop fighting" twice, and hit Kivinen across his head with her beer bottle after he refused to let Willis go.

¶6. The fight then ended. Kivinen and his son retreated up the hill to Kivinen's truck. As Kivinen climbed inside, Willis heard him say, "[N]ext time it will be a f------ bullet."

¶7. After one hospital visit and a work-related trip, Pickett filed charges against Kivinen and his son. As a result, Kivinen was indicted for aggravated assault under Mississippi Code Annotated section 97-3-7 (Rev. 2014). The relevant part of his indictment, which did not cite a specific subsection of the aggravated assault statute, charged the following:

---

[3] Kivinen disputes that he had a gun that night.

3

late of the County aforesaid, in said County, on or about October 23, 20l7, acting in concert with another, in and upon Charles Pickett, then and there did willfully, unlawfully, feloniously and purposely make an assault by beating him with a baseball bat, with the felonious intent of him and another, the said Sami Kaleva Kivinen, to willfully, unlawfully, feloniously and purposely cause serious bodily injury to the said Charles Pickett and did in fact cause serious bodily harm to the said Charles Pickett.

¶8.     Kivinen proceeded to trial on this charge.  During direct examination, Pickett testified his head injuries required "probably" fifteen staples and resulted in him having a CAT scan. When the State further probed him about the severity of his injuries, he claimed he sustained up to three lacerations, had a concussion "for sure," and was "sure" he was unconscious after Kivinen and his son attacked him.

¶9.     On cross-examination, Kivinen confronted Pickett about the extent of his injuries by asking him why his injuries merely required staples, rather than stitches, and whether his skull was cracked.[4]  Pickett replied, "[I]f you're asking me if they broke my skull and fractured my skull, I have to say no[.]"  He added, "[B]ut I'm sure he intended to."

¶10.   At the close of evidence, the parties rested their cases.  The trial court allowed the State to submit jury instruction S-2, among others, which reflected the following:

> The Defendant, SAMI KIVINEN, has been charged by an indictment with the crime of Aggravated Assault for having acted in concert with another in purposely, knowingly, and feloniously making an assault on one Charles

---

[4] These questions appear to be Kivinen's attempt to support his proposition during opening statement that the attack did not amount to aggravated assault, but was merely simple assault.  Specifically, he insisted that "[t]his was [just] a bar fight."

Pickett in a way likely to result in serious bodily harm, and with the intent to cause bodily injury to the said Charles Pickett.

If you find from the evidence in this case beyond a reasonable doubt that on or about October 23, 2018, in Adams County, Mississippi, that the defendant, SAMI KIVINEN, acting in concert with others, willfully and purposely made an assault on Charles Pickett by striking him, or causing him to be struck, with a bat and a pistol causing bodily injury to Charles Pickett and not in necessary self-defense, then you shall find the defendant, SAMI KIVINEN, guilty of Aggravated Assault.

¶11. A little over two hours and a dinner break into its deliberations, the jury sent a note to the court asking if it could see Pickett's medical records. The court ordered the jury to continue its deliberations with the evidence available to them since Pickett's specific medical records were not in evidence.

¶12. After a few more hours of deliberating, the jury finally reached a unanimous verdict and found Kivinen guilty of aggravated assault. The court sentenced him to serve ten years in the custody of the Mississippi Department of Corrections but agreed to suspend his sentence on the condition of his deportation from the United States and back to his home country in Finland. Kivinen filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied his motion.

¶13. Aggrieved, Kivinen appeals. He asserts three assignments of error, but because one is dispositive, we only address whether the State omitted an essential element from its jury instruction.[5]

---

[5] Kivinen does not challenge the sufficiency of the evidence.

**STANDARD OF REVIEW**

¶14. "Jury instructions are generally within the discretion of the trial court[,] and the settled standard of review is abuse of discretion." *Moody v. State*, 202 So. 3d 1235, 1236-37 (¶7) (Miss. 2016) (quoting *Bailey v. State*, 78 So. 3d 308, 315 (¶20) (Miss. 2012)).

¶15. Furthermore, "[f]ailure to instruct the jury as to an essential element of the crime is reversible error." *Brown v. State*, 225 So. 3d 1263, 1273 (¶35) (Miss. Ct. App. 2016), *rev'd on other grounds*, 222 So. 3d 302 (Miss. 2017). For "[d]ue[-]process rights include the right to a properly instructed jury." *Id*. at (¶36).

¶16. To ensure this right is safeguarded, "the circuit court is responsible for assuring that the jury is 'fully and properly instructed on all issues of law relevant to the case.'" *Id*. at 1273-74 (¶36) (citation omitted). "The trial court is ultimately responsible for rendering proper guidance to the jury via appropriately given jury instructions, even sua sponte." *Id*.

**ANALYSIS**

¶17. Kivinen argues that the State failed to instruct the jury on the essential elements of his aggravated assault charge. He makes this claim based on the State's omission of the word "serious" from the phrase "serious bodily injury." Kivinen insists the missing word is a key term.

¶18. We first point out that Kivinen did not object to the State's jury instruction at trial. But he urges this Court to review the claim nonetheless because the "failure to instruct the jury on the essential elements of the crime is plain error." *Bolton v. State*, 113 So. 3d 542,

544 (¶4) (Miss. 2013) (quoting *Rogers v. State*, 95 So. 3d 623, 632 (¶30) (Miss. 2012)).

Therefore, through the lense of plain error, we examine whether the omission of the term

"serious" from Kivinen's jury instruction warrants reversal and remand.

¶19.   The State indicted Kivinen under section 97-3-7 without referencing a specific

subsection, so we must first determine which one applies.[6]   His indictment charged the

following:

SAMI KALEY A KIVINEN

> late of the County aforesaid, in said County, on or about October 23, 2017,
> acting in concert with another, in and upon Charles Pickett, then and there did
> willfully, unlawfully, feloniously and purposely make an assault by beating
> him with a baseball bat, with the felonious intent of him and another, the said
> Sami Kaleva Kivinen, to willfully, unlawfully, feloniously and purposely
> **cause serious bodily injury** to the said Charles Pickett and **did in fact cause
> serious bodily harm** to the said Charles Pickett.

(Emphasis added).

¶20.   Although his indictment does not reference a subsection, Kivinen's indictment

charged him with "willfully" causing *serious* bodily injury to the victim.  The use of this

---

[6] Section 97-3-7(2)(a)(i)-(ii) tracks the following language:

A person is guilty of aggravated assault if he or she (i) attempts to cause
serious bodily injury to another, or causes such injury purposely, knowingly
or recklessly under circumstances manifesting extreme indifference to the
value of human life; [or] (ii) attempts to cause or purposely or knowingly
causes bodily injury to another with a deadly weapon or other means likely to
produce death or serious bodily harm.

Miss. Code Ann. § 97-3-7(2)(a)(i)-(ii).

7

specific language demonstrates that his indictment more closely tracks subsection (i).

¶21. We reached the same conclusion very recently in another case where a defendant charged with aggravated assault was issued an indictment that did not specify a subsection of the aggravated assault statute. *Washington v. State*, 298 So. 3d 430, 435 (¶14) (Miss. Ct. App. 2020). In that case, the defendant's indictment established that he had caused "serious bodily injury" to his victim by dragging her through broken glass. *Id*. After noting that the indictment failed to list a subsection, we looked to the specific language of the defendant's indictment and found that subsection (i) applied because the phrase "serious bodily injury" had been used. *Id*. The same result logically follows here.

¶22. Along with the question of which subsection applied, *Washington* further addressed whether the omission of the word "serious" from the phrase "serious bodily injury" was reversible error. *Id*. The indictment required the State to prove the defendant attempted to cause serious bodily injury. *Id.* But at trial, the State instructed the jury to find the defendant guilty if he caused *bodily injury* to the woman. *Id*. at (¶15). We deemed the State's instruction inadequate because the omission of the word "serious" "broaden[ed] the grounds upon which [the defendant] was convicted." *Id.* at 436 (¶18). Accordingly, we reversed the defendant's conviction on this charge and remanded for a new trial. *Id*.

¶23. Another recent case we decided is just as instructive. In this case, the defendant was indicted for aggravated assault and was charged with inflicting "serious bodily injury" upon several victims by shooting them with a firearm. *Brown*, 225 So. 3d 1263 at (¶32). But just

8

as in *Washington*, the State instructed the jury to find the defendant guilty if he merely caused "bodily injury" to the victims with the gun. *Id*. at 1273 (¶34).

¶24. *Brown* turned on the well-established rule that juries must be "fully and properly instructed on *all* issues of law relevant to the case." *Id*. at (¶36) (emphasis added). Considering this rule, we found the omission of the word "serious" from the phrase "serious bodily injury" robbed the jury of proper and adequate instruction. *Id*. at 1274 (¶39). Because "[s]erious bodily injury is an essential element of the crime of aggravated assault," it is reversible error when omitted from an instruction." *Id*. at 1273 (¶34).

¶25. Furthermore, this Court declared the omission "substantially altered the proof necessary for a conviction in [the] case and broadened the grounds upon which [the defendant] was convicted." *Id*. We reversed the defendant's aggravated assault conviction on these grounds and remanded for a new trial. *Id*. at 1275 (¶41).

¶26. In accordance with *Washington* and *Brown*, we find the State failed to adequately instruct the jury on all elements of aggravated assault by omitting the word "serious" from the phrase "serious bodily injury." Kivinen's indictment charged him with using some instrument—a baseball bat—to "in fact" cause *serious* bodily injury to Pickett, which we construe as a charge under section 97-3-72(2)(a)(i). These were the claims that were to be prosecuted and defended at trial. However, the jury was instructed it could find Kivinen guilty if he simply caused *bodily injury* to Pickett by injuring him or causing him to be injured by a bat and pistol. As in *Washington*, the instruction was inadequate because it

9

"broadened the grounds upon which [Kivinen] was convicted." *Washington*, 298 So. 3d at 436 (¶18). The jury was no longer required to consider how serious the victim's injuries were—an essential element under our precedent.

¶27. The separate opinion insists we should assume the State intended to indict Kivinen under *both* subsections (i) and (ii) because his indictment did not specify a subsection and because it mentioned that he used a bat and pistol, which can be deadly weapons under subsection (ii). The separate opinion correctly notes the general rule that "the State is not required to distinguish the subsection under which it brings the charges" since the charges are not necessarily mutually exclusive. *State v. Hawkins*, 145 So. 3d 636, 644-45 (¶22) (Miss. 2014). Based on this general rule, the separate opinion contends we cannot reverse because the instructions given at Kivinen's trial sufficiently reflected the broad charges in his indictment.

¶28. Yet even if we were to accept the proposition that Kivinen was indicted under both subsections, the State's jury instructions still falter. First, if the State intended to indict Kivinen under both subsections (i) and (ii), it was required to submit a collection of instructions referencing the burdens in both subsections. But even when read together, the State's instructions address subsection (i) *only*.

¶29. Specifically, one instruction implored the jury to find Kivinen guilty of aggravated assault if they found that he, "in concert with others . . . made an assault on [the victim] by striking him, or causing him to be struck, with a bat and a pistol causing bodily injury to [the

10

victim] . . . ." The other relevant instruction told the jury that "it [was] a question of fact for [them] to determine whether the striking with a bat and pistol . . . was committed in a way likely to result in serious harm or death."

¶30.   Yet neither of these instructions directed the jury to determine whether Kivinen had "in fact" caused or attempted to cause serious bodily injury, as his indictment set out and as directed under section 97-3-7(2)(a)(i). Instead, the instructions only referenced the language exclusively found in subsection (ii). Under our precedent in *Brown* and *Washington*, this discrepancy between his indictment and the essential elements of the statute is a critical error.[7]

¶31.   Furthermore, the omission of the word "serious" is not the only flaw in the indictment worth mentioning. For subsection (i), the State also omitted from Kivinen's jury instruction the essential element, which reads "knowingly or recklessly under the circumstances manifesting extreme indifference to the value of human life." *See Quick v. State,* 569 So. 2d

---

[7] The separate opinion urges us to construe Kivinen's indictment as charging him under subsection (ii) because his indictment mentioned a weapon. But we did not adopt such a broad view in *Washington* where a defendant was indicted for causing *serious* bodily injury to his victim by using yet another potentially deadly weapon—broken glass. Instead, we found only subsection (i) applied. Therefore, we decline to adopt the separate opinion's view in this case.

We further add that the term "serious" within the context of subsection (ii) in Kivinen's indictment does not automatically categorize this as a subsection (i) case. In fact, we found in one case that the phrase "in a way likely to cause serious bodily harm" under subsection (ii) is merely a reference to a "weapon's capability" and "[has] nothing to do with [subsection (i)]." *Jenkins v. State*, 913 So. 2d 1044, 1051 (¶22) (Miss. Ct. App. 2005).

Importantly, *Jenkins* also emphasized that the "serious bodily injury requirement" is a key distinction between (i) and (ii). *Id*. at (¶21).

11

1197, 1999-1200 (Miss. 1990) (finding the element to be one of substance, and not merely form). And even if the State intended to indict Kivinen under subsection (ii), the essential element "with a deadly weapon" is also missing. *See Boyd v. State*, 47 So. 3d 121 (Miss. 2010) (¶13) ("[T]he phrase 'with a deadly weapon or other means likely to produce death or serious bodily harm' is an essential element of the statute."). These are not optional elements; they are *essential*. Because they are explicitly listed in the statute, they should have been both alleged and later proved at trial.

¶32. As the separate opinion points out, the State's instructions were "imperfect" and "confusing." This is not to be taken lightly, for a jury instruction's most important role in the deliberating process is "to guarantee that juries are provided with accurate law in order to reach a decision." 2 Jeffrey Jackson, Donald E. Campbell & Justin L. Matheny, Mississippi Practice Series: Mississippi Civil Procedure § 20:8 (2020). Jury instructions provide a jury with the lens to view the testimony and evidence admitted at trial. When that lens is "imperfect" or "confusing," the result will be as well.[8] As a result, it is critical that the instructions "contain an accurate statement of the law," and that trial courts "refuse to give jury instructions that incorrectly state the law." *Id*. We cannot say these instructions correctly instructed the jury on the essential elements of the crime.

---

[8] The fact that we are forced to guess which subsection applies is problematic in and of itself, for it diminishes the fundamental requirement that every essential element of a criminal charge must be proved "beyond a reasonable doubt." We cannot merely guess whether the jury properly considered the elements of aggravated assault according to the indictment under which he was charged.

12

¶33. Furthermore, the missing element from the instructions in effect deprived Kivinen of the opportunity to "adapt his defense" and further lowered the burden of proof on injury. *Bell v. State*, 287 So. 3d 944, 956 (¶20) (Miss. Ct. App. 2019) (finding the trial court erred in allowing the amendment of an instruction that omitted the term "serious" from "serious bodily injury"), *cert. denied*, 287 So. 3d 217 (Miss. 2020). While nothing in the record suggests the State moved to amend the indictment itself, the record reflects after the parties rested, the State introduced an instruction that diverted from the language tracked in Kivinen's indictment. Kivinen's indictment accused him of "in fact" inflicting *serious* bodily injury upon Pickett. By the time trial commenced, Kivinen had built his case on that specific fact and was prepared to defend it. But when the State omitted the word "serious" from its jury instruction, the jury was essentially instructed to disregard both an essential fact in the indictment and any trial tactics Kivinen prepared to refute that fact.

¶34. As a result, Kivinen's defense that this was a mere bar fight was nullified. The record reflects Kivinen questioned Pickett about the seriousness of his injuries and insisted during opening statement that his actions constituted merely a simple rather than an aggravated assault. In effect, Kivinen's defense was that the victim's injuries were not as serious as he claimed, and that the jury could not find serious bodily injury, as shown by his counsel's cross-examination of Pickett.

> Q.   The way I understand it, there are three lacerations, right?
> A.   Yes.
> Q.   And when I say lacerations, they were cuts. Pretty deep, right?
> A.   They had staples in them, every one of them did.

Q. Why not stitches?
A. I'm not a doctor. The doctor decided to put staples in.
Q. Did it crack your skull?
A. They took a CAT scan, and I'm sure you have the records.
Q. They took a CAT scan, but they didn't tell you how it came out[?]
A. The next morning I left, and didn't go back to that particular doctor for service, but if you're asking me if they broke my skull and fractured my skull, I have to say no.

¶35. But despite this defense tactic, and because the jury instruction lacked a critical element, the jury was allowed to convict him of aggravated assault even if the injuries were not serious as his indictment set out.

¶36. In this case, the jury instruction omitted an essential element of the crime and, in effect, "materially changed the allegations" Kivinen was set to face. "[I]t is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to *each and every* element." *Harrell v. State*, 134 So. 3d 266, 275 (¶30) (Miss. 2014) (emphasis added). Because we find Kivinen was denied "the right to have [the] jury decide guilt as to each and every element," and in accordance with *Brown* and *Washington*, we reverse Kivinen's conviction and remand for a new trial. *Id*.

¶37. Because we reverse and remand for a new trial on this issue alone, we decline to address whether the trial court erred in denying Kivinen's motion for a continuance or allowing a constructive amendment to his indictment.

¶38. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR. GREENLEE, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., DISSENTS WITH**

14

**SEPARATE WRITTEN OPINION, JOINED BY SMITH, J. EMFINGER, J., NOT PARTICIPATING.**

WILSON, P.J., DISSENTING:

¶39. Kivinen's conviction should be affirmed because the jury instructions covered the elements of the offense and because Kivinen waived any objection to any other alleged imperfection in the instructions.

¶40. Respectfully, the majority conflates two distinct issues: whether the jury instructions omitted an element of the offense and whether the instructions constructively amended the indictment. To determine whether the instructions omitted an element, we must compare them with the statute that defines the offense.[9] To determine whether the instructions constructively amended the indictment, we compare them with the indictment.[10] The majority states that it is addressing only the former issue (*see ante* at ¶¶1, 15, 17-18, 36-37) and that it "decline[s] to address whether the trial court erred in . . . allowing a constructive amendment to [the] indictment." *Ante* at ¶37. In substance, however, the majority addresses

---

[9] *See, e.g.*, *Dunn v. State*, 891 So. 2d 822, 825 (¶20) (Miss. 2005) (stating that the aggravated assault statute "sets forth the elements of aggravated assault"); *see also, e.g.*, *Wilcher v. State*, 227 So. 3d 890, 895 (¶28) (Miss. 2017) ("[T]he power to create and define criminal offenses rests exclusively within the authority of the Legislature."); *Wilson v. State*, 198 So. 3d 408, 419 (¶37) (Miss. Ct. App. 2016) ("An offense is defined by its elements—it is simply the sum of its elements." (quotation marks omitted)).

[10] "A constructive amendment of the indictment occurs when the proof and instructions broaden the grounds upon which the defendant may be found guilty of the offense charged so that the defendant may be convicted without proof of the elements *alleged by the grand jury in its indictment*." *Collins v. State*, 305 So. 3d 1262, 1266 (¶17) (Miss. Ct. App. 2020) (emphasis added) (quoting *Bell v. State*, 725 So. 2d 836, 855 (¶58) (Miss. 1998)).

the latter issue. The majority argues that the trial judge erred by giving an instruction that deviated from the language of the indictment. *Ante* at ¶¶26, 30, 33. That is an argument that the indictment was constructively amended, not that the instruction was missing an element.

¶41. The distinction between these two issues is critically important when, as in this case, the defendant failed to object to the jury instructions at trial. This is because our Supreme Court has held that "the 'failure to instruct the jury on the essential elements of the crime is plain error'" and "is always and in every case reversible error."[11] However, "a defendant's 'failure to object to the jury instruction as constructively amending the indictment waives this issue on appeal,'" and "not all variances between the indictment and instructions . . . rise to plain error."[12]

¶42. The jury instructions in this case could have been clearer, but read as a whole, they covered all of the essential elements of the crime of aggravated assault. Moreover, Kivinen not only failed to object to any of the jury instructions but also offered his own instruction covering the elements of the offense, which the trial judge granted. The jury instructions given at trial do not require automatic reversal. At worst, they are imperfect instructions to

---

[11] *Hodges v. State*, 285 So. 3d 711, 721-22 (¶¶41-42) (Miss. Ct. App. 2019) (quoting *Bolton v. State*, 113 So. 3d 542, 544 (¶4) (Miss. 2013); *Harrell v. State*, 134 So. 3d 266, 275 (¶30) (Miss. 2014)).

[12] *Brent v. State*, 296 So. 3d 42, 50 (¶30) (Miss. 2020) (brackets omitted) (quoting *Neal v. State*, 15 So. 3d 388, 397 (¶13) (Miss. 2009); *Bell*, 725 So. 2d at 855 (¶61)); *see also* MRCrP 22(d) ("A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court, on the record, of the specific objection and the grounds therefor before the instructions are presented to the jury.").

16

which Kivinen waived any objection.

**I.      The jury instructions covered all essential elements of aggravated assault.**

¶43.    "The instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context." *Bailey v. State*, 78 So. 3d 308, 315 (¶20) (Miss. 2012) (quoting *Young v. State*, 891 So. 2d 813, 819 (¶16) (Miss. 2005)). "When read together, if the jury instructions fairly state the law of the case and create no injustice, then no reversible error will be found." *Id.*

¶44.    In this case, the jury instructions on the elements of the offense included not only Instruction 7 (S-2) but also Instructions 9 (S-4) and 11 (D-1). Instructions 7 and 9 in particular must be read together. Those instructions stated:

INSTRUCTION 7

The Defendant, SAMI KIVINEN, has been charged by an indictment with the crime of Aggravated Assault for having acted in concert with another in, purposely, knowingly and feloniously making an assault on one Charles Pickett in a way likely to result in serious bodily harm, and with the intent to cause bodily injury to the said Charles Pickett.

If you find from the evidence in this case beyond a reasonable doubt that on or about October 23, 2018, in Adams County, Mississippi, that the defendant, SAMI KIVINEN, acting, in concert with others, wilfully and purposely made an assault on Charles Pickett by striking him, or causing him to be struck, with a bat and a pistol causing bodily injury to Charles Pickett and not in necessary self-defense, then you shall find the defendant, SAMI KIVINEN, guilty of Aggravated Assault.

If the State has failed to prove any one or more of the above elements beyond a reasonable doubt, then you shall find the defendant not guilty of Aggravated Assault.

INSTRUCTION 9

It is a question of fact for you to determine whether the striking with a bat and pistol claimed to have been committed by SAMI KIVINEN, while acting in concert with another, was committed in a way likely to result in serious bodily harm or death.

Mere bodily injury can be sufficient to support aggravated assault provided you, as the jury, find that the choking and/or striking was a means likely to produce serious bodily harm.

¶45. To determine whether these instructions cover the essential elements of the offense, the instructions must be compared to the statutory definition of aggravated assault. The statute sets out multiple different ways that an aggravated assault may be committed:

A person is guilty of aggravated assault if he or she (i) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; [or] (ii) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . .

Miss. Code Ann. § 97-3-7(2)(a) (Rev. 2020).

¶46. Read together, Instructions 7 and 9 charge the jury on the elements of aggravated assault under romanette (ii) of the statute. *Id.* Instruction 7 required the jury to find that Kivinen intentionally assaulted Pickett and caused "bodily injury" to Pickett "by striking him, or causing him to be struck, with a bat and a pistol." Then, in Instruction 9, the court instructed that it was "a question of fact for [the jury] to determine whether the [alleged] striking with a bat and pistol . . . was committed in a way likely to result in serious bodily harm or death." The court further instructed that "[m]ere bodily injury can be sufficient to

18

support aggravated assault provided you, as the jury, find that the choking[13] and/or striking was a means likely to produce serious bodily harm."

¶47.    Standing alone, Instruction 7 would have been inadequate because it did not instruct the jury that it was required to find that the beating with a bat and a pistol was done in a manner likely to produce death or serious bodily harm.[14] However, Instruction 9 addressed that element by stating that it was a question of fact for the jury to determine whether the beating with the bat and pistol was done in a manner likely to produce death or serious bodily harm.  Our Supreme Court has held repeatedly that jury instructions must "be read together as a whole," and "no one instruction [may] be read alone or taken out of context." *Bailey*, 78 So. 3d at 315 (¶20) (quoting *Young*, 891 So. 2d at 819 (¶16)).  Read together, Instructions 7 and 9 covered all of the essential elements of aggravated assault.  Accordingly, Kivinen is not entitled to automatic reversal on this ground.

¶48.    The instructions regarding the elements of the offense were somewhat confusing and could have been clearer, but "[t]here is no per se rule requiring automatic reversal whenever jury instructions contain conflicting or potentially confusing explanations of the law."

---

[13] The instruction should not have referenced "choking" because there was no evidence that Kivinen or his son choked Pickett.  There was testimony that Kivinen choked Willis, but the victim of the assault was Pickett, not Willis.  However, the issue is waived because Kivinen did not object to the instruction or any part of it.

[14] *Cf. Jackson v. State*, 594 So. 2d 20, 24 (Miss. 1992) (holding that whether or not a beating with hands and closed fists is "a 'means likely to produce serious bodily harm' involves a question of fact to be decided by the jury in light of the evidence"); *Sellers v. State*, 108 So. 3d 456, 459 (¶7) (Miss. Ct. App. 2012) (same).

19

*Johnson v. State*, 290 So. 3d 1232, 1240 (¶33) (Miss. 2020) (quoting *Rodgers v. State*, 166 So. 3d 537, 544 (¶14) (Miss. Ct. App. 2014)). "That instructions may be made more perfect does not mean they are legally inadequate." *Id.* at 1241 (¶39) (quoting *Turner v. State*, 573 So. 2d 1340, 1343 (Miss. 1990)). In addition, because Kivinen failed to object at trial, the issue is procedurally barred unless it rises to the level of plain error. *Id.* at 1240 (¶¶33-34). The instructions in this case, though potentially confusing, did not result in any "manifest injustice." *Id.* at (¶34).

¶49. In addition, Kivinen not only failed to object to any jury instructions but also was granted his own instruction on the elements of the offense. Kivinen's instruction also covered the elements of the offense but under a different theory than Instructions 7 and 9. Instruction 11 (D-1) stated:

> The elements that must be proven by the prosecution in this case are as follows:
>
> 1.     That the Defendant, SAMI KIVINEN, did act in concert with another person to assault the victim herein, with the intent to cause serious bodily injury to him.
>
> 2.     That the Defendant knew of the actions of the other person involved herein, and did have the same intentions as the person to cause serious bodily injury.
>
> If the prosecution is unable to prove that the Defendant did intentionally intend to cause serious bodily injury, then you must find the Defendant "Not Guilty"' of the crime of Aggravated Assault. If the prosecution, however, does prove beyond a reasonable doubt that the Defendant did intentionally act with another to cause serious bodily injury, then you must find the Defendant "Guilty". If you find that the Prosecution did not prove beyond a reasonable doubt that the Defendant did commit Aggravated Assault, but instead that they

proved Simple Assault, then you may return a verdict of Guilty to Simple Assault.

¶50. This instruction, which the trial judge gave at Kivinen's request, also covered the essential elements of aggravated assault, albeit under romanette (i). *See* Miss. Code Ann. § 97-3-7(2)(a) ("A person is guilty of aggravated assault if he or she (i) attempts to cause serious bodily injury to another . . . ."). Kivinen's instruction fairly covered the essential elements of aggravated assault under romanette (i) by requiring the jury to find that Kivinen assaulted Pickett "with the intent to cause serious bodily injury to him."

¶51. To summarize, Kivinen both (1) failed to object to any of the instructions that the State offered—instructions that while imperfect nonetheless covered the essential elements of the offense—and then (2) requested and received his own instruction, which also covered the essential elements of the offense, albeit under a different theory. Because the jury was instructed on the essential elements of the offense, automatic reversal is not required. Rather, this appeal is governed by the general rule that Kivinen waived any imperfections in the instructions by failing to object at trial.

II. **The alleged variance between the indictment and the jury instructions is not plain error.**

¶52. As discussed above, a claim that the jury instructions constructively amended the indictment is analytically distinct from a claim that the instructions completely omitted an element. Most important for purposes of this appeal, "a defendant's 'failure to object to the jury instruction as constructively amending the indictment waives this issue on appeal,'" and

21

"not all variances between the indictment and instructions . . . rise to plain error." *Brent*, 296 So. 3d at 50 (¶30) (brackets omitted) (quoting *Neal*, 15 So. 3d at 397 (¶13); *Bell*, 725 So. 2d at 855 (¶61)). Kivinen failed to object to any of the instructions at issue in this case and therefore waived this issue absent "plain error."

¶53. "A constructive amendment of the indictment occurs when the proof and instructions broaden the grounds upon which the defendant may be found guilty of the offense charged so that the defendant may be convicted without proof of the elements alleged by the grand jury in its indictment." *Collins*, 305 So. 3d at 1266 (¶17) (quoting *Bell*, 725 So. 2d at 855 (¶58)). Thus, this issue requires us to compare the indictment with the jury instructions.

¶54. The indictment in this case alleges that Kivinen,

> acting in concert with another, in and upon . . . Pickett, then and there did willfully, unlawfully, feloniously and purposely make an assault by beating him with a baseball bat, with the felonious intent of . . . Kivinen, to willfully, unlawfully, feloniously and purposely cause serious bodily injury to . . . Pickett and did in fact cause serious bodily harm to . . . Pickett . . . ;
>
> contrary to the form of the statute in such cases made and provided . . . .

The indictment identifies "Aggravated Assault" as the offense and "97-3-7" as the relevant Code section. It does not specify romanette (i) or (ii).

¶55. Our Supreme Court has held that the "subsections of [the] aggravated assault [statute] are not mutually exclusive," and for that reason, "the State is not required to distinguish the subsection under which it brings the charges." *State v. Hawkins*, 145 So. 3d 636, 644-45 (¶22) (Miss. 2014). In other words, an indictment may simultaneously charge the defendant

22

under both romanette (i) and (ii) and under multiple theories of aggravated assault. *Id.* at 642-43 (¶18) (discussing *Stevens v. State*, 808 So. 2d 908, 919-20 (¶¶35-36) (Miss. 2002), and *Johnson v. State*, 910 So. 2d 1174, 1179-80 (¶20) (Miss. Ct. App. 2005)). Moreover, the Supreme Court has indicated that if the defendant "was charged not under a specific single subsection of [section] 97-3-7(2), it necessarily follows that he was charged under *both* subsections comprising that section"—i.e., under both romanette (i) and (ii). *Id.* at 643 (¶18) (emphasis added) (quoting *Stevens*, 808 So. 2d at 920 (¶36)).

¶56.    *Hawkins*, *Stevens*, and *Johnson* are consistent with the general rule that when a statute sets out multiple alternative (i.e., disjunctive) ways in which an offense may be committed, "the indictment . . . may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction 'and' where the statute has 'or[.]'" *Azomani v. State*, 222 So. 3d 343, 351-52 (¶20) (Miss. Ct. App. 2016) (quoting *Coleman v. State*, 94 Miss. 860, 863, 48 So. 181, 182 (1909)), *aff'd*, 222 So. 3d 282 (Miss. 2017). The jury may then be instructed that the defendant is guilty of the offense if the proof at trial establishes "any one of" the alternatives. *Id.* (quoting *Coleman*, 94 Miss. at 863, 48 So. at 182); *see also, e.g.*, *Turner v. United States*, 396 U.S. 398, 420 (1970) ("The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged.").

¶57.    The majority argues that if the indictment charged Kivinen under both romanette (i)

and (ii), then the State "was required to submit a collection of instructions referencing the burdens under both subsections." *Ante* at ¶28. This is incorrect. As just stated, an indictment under a disjunctively worded statute may charge "as many" alternatives "as the pleader chooses," and the defendant may be convicted if the proof at trial establishes "any one of" those alternatives. *Azomani*, 222 So. 3d at 351 (¶20) (quoting *Coleman*, 94 Miss. at 863, 48 So. at 182). The effect of this rule is "to relieve the prosecution of the need to make a choice *at the pleading stage*." 5 Wayne R. LaFave et al., *Criminal Procedure* § 19.3(b), at 902 (4th ed. 2015) (emphasis added). It does not require the prosecution to prove every alternative at trial. Accordingly, the State is under no obligation to submit instructions on every alternative covered by the indictment.[15]

¶58. Because the indictment in this case did not specify that Kivinen was being charged exclusively under either romanette (i) or romanette (ii), it may be construed as charging him under both. *Hawkins*, 145 So. 3d at 643 (¶18). The indictment was sufficient to charge Kivinen with causing or attempting to cause serious bodily injury under romanette (i). Miss. Code Ann. § 97-3-7(2)(a)(i). Indeed, Kivinen implicitly recognized this by submitting Instruction 11 (D-2), which instructed the jury on the elements of the offense under romanette (i).

---

[15] The majority's complaint that the State's instructions addressed romanette "(ii) *only*" (*ante* at ¶28) also ignores that Kivinen himself submitted an instruction that covered the elements of romanette (i). The indictment, jury instructions, and proof were sufficient for the jury to convict Kivinen on that theory as well.

24

¶59. In addition, the indictment's specific allegation that Kivinen and his accomplice assaulted Pickett "by beating him with a baseball bat" can be read as charging Kivinen with causing or attempting to cause injury "with a deadly weapon or other means likely to produce death or serious bodily harm." *Id.* § 97-3-7(2)(a)(ii). The indictment did not quote that language, but its allegation of a beating with a baseball bat was sufficient to notify Kivinen of the nature of the charge. *See* MRCrP 14.1(a). Moreover, "[f]ormal and technical words are not necessary in an indictment, if the offense can be substantially described without them." *Id.* Thus, this Court has held that an indictment for aggravated assault that charges a defendant with using a "gun" or a "handgun" is sufficient to charge an aggravated assault "with a deadly weapon" despite the indictment's failure to allege specifically that the gun was a deadly weapon. *Mayers v. State*, 42 So. 3d 33, 37-38 (¶¶5-8) (Miss. Ct. App. 2010), *cert. denied*, 42 So. 3d 24 (Miss. 2010), *overruled on other grounds by Sallie v. State*, 155 So. 3d 760, 762 n.1 (Miss. 2015); *Parisie v. State*, 848 So. 2d 880, 886 (¶23) (Miss. Ct. App. 2002). In *Mayers*, the defendant argued that the indictment's reference to a "gun" was insufficient because "a 'gun' could refer to a paint gun, staple gun, toy gun, or grease gun." *Mayers*, 42 So. 3d at 38 (¶6). This Court disagreed, holding that it was "clear from the indictment that [the defendant] injured the two [victims] with a deadly weapon." *Id.* at (¶8). Likewise, in this case, it is evident that Kivinen and his accomplice beat Pickett with a baseball bat in a manner likely to produce serious bodily harm.

¶60. Because the indictment in this case was sufficient to put Kivinen on notice that he was

being charged under romanette (ii), Instructions 7 and 9 did not constitute a constructive amendment of the indictment. Rather, those instructions properly charged the jury on a theory that the indictment covered.[16]

¶61. Moreover, because Kivinen failed to object to the instructions at trial, the issue is waived. *Brent*, 296 So. 3d at 50 (¶30). There is no plain error because the alleged error was not "plain, clear, or obvious" and did not produce a "manifest miscarriage of justice." *Collins*, 305 So. 3d at 1267 (¶19) (quoting *Willie v. State*, 204 So. 3d 1268, 1279 (¶29) (Miss. 2016)). Rather, Instructions 7 and 9 reflect, at the very least, a reasonable interpretation of Kivinen's indictment, and the indictment itself clearly put Kivinen on notice that he was being charged with aggravated assault for beating Pickett with a baseball bat. The majority argues that the jury instructions "nullified" Kivinen's defense that Pickett's injuries were not "serious." *Ante* at ¶34. However, the statute defines aggravated assault to include a mere "attempt[] to cause serious bodily injury," whether or not such injury is actually inflicted,

---

[16] An indictment alleging multiple theories of aggravated assault could be drawn more clearly than the indictment in this case. For example, the indictment in this case could have alleged that Kivinen and his accomplice, acting in concert, attempted to cause serious bodily injury to Pickett by beating him with a baseball bat and a gun; *and* intentionally caused serious bodily injury to Pickett by beating him with a baseball bat and a gun; *and* attempted to cause bodily injury to Pickett with a deadly weapon or other means likely to produce death or serious bodily harm by beating him with a baseball bat and a gun; *and* caused bodily injury to Pickett with a deadly weapon or other means likely to produce death or serious bodily harm by beating him with a baseball bat and a gun. Based on such an indictment, the jury could have been instructed at trial that Kivinen was guilty of aggravated assault if the proof established "any one of" those grounds beyond a reasonable doubt. *Azomani*, 222 So. 3d at 351 (¶20) (quoting *Coleman*, 94 Miss. at 863, 48 So. at 182). Such an indictment would be less susceptible to constructive-amendment objections.

Miss. Code Ann. § 97-3-7(2)(a)(i), and the indictment was sufficient to put Kivinen on notice that he was being charged on that ground. Thus, Kivinen's claim that Pickett's injuries were not "serious" was never a complete defense to the charge against him.

**CONCLUSION**

¶62. As discussed at the beginning of this opinion, the majority conflates the omission of an element with a constructive amendment. Read together, Jury Instructions 7 and 9 cover the elements of the offense of aggravated assault under romanette (ii) of the statute. In addition, Kivinen's own elements instruction (Instruction 11) covers the elements of the offense under a different theory under romanette (i) of the statute. The majority does not point to any statutory element that is *missing*. What the majority argues instead is that there is a *variance* between *the indictment* and the jury instructions. That is an argument that the indictment was constructively amended, not a missing element.

¶63. Read as a whole, the jury instructions that were given at trial covered the statutory elements of aggravated assault. Therefore, Kivinen is not entitled to automatic reversal. In addition, Kivinen waived any objection to any other alleged imperfections in the instructions by failing to object to any of them at trial. Accordingly, I respectfully dissent.

**SMITH, J., JOINS THIS OPINION.**

27